UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

INSPIRED ENTERPRISES, INC.,

        Plaintiff,

v.

        Case No. 23-cv-1256-pp

DRX MARKETING, LLC,

        Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 14), DENYING PLAINTIFF'S REQUEST FOR INJUNUCTIVE RELIEF AND REQUIRING PLAINTIFF'S COUNSEL TO FILE EVIDENCE IN SUPPORT OF REQUEST FOR ATTORNEY'S FEES**

---

On September 22, 2023 the plaintiff filed a complaint alleging two counts of unfair competition/false representation of fact under 15 U.S.C. §1125, *et seq.,* one count of trademark infringement under 15 U.S.C. §1114 and two counts of copyright infringement under 17 U.S.C. §501. Dkt. No. 1. In an affidavit filed on March 11, 2024, the plaintiff's counsel averred that on December 12, 2023, after several attempts to serve the defendant's registered agent at the address on file, the plaintiff had resorted to service through the New Jersey Department of Treasury. Dkt. No. 12. Counsel attested that the defendant had not responded and asked for entry of default. Id. The Clerk of Court entered default on March 12, 2024. The plaintiff now asks the court to enter default judgment. Dkt. No. 13.

**I.    Procedural History**

The complaint states that "[u]pon information and belief, likely to have evidentiary support after a reasonable opportunity for further investigation or

1

discovery, Defendant DRX Marketing, LLC is a New Jersey limited liability corporation, with a principal place of business address of 602 Higgins Avenue, #182, Brielle, New Jersey 08730." Dkt. No. 1 at ¶3. The summons issued by the clerk's office is addressed to "DRX Marketing, LLC, 602 Higgins Avenue, #182, Brielle, New Jersey 08703." Dkt. No. 1-3. On December 21, 2023, the plaintiff filed a proof of service stating that on September 27, 2023, "personal service was attempted . . . on DRX's Registered Agent Dereck Hull at DRX's Registered Office." Dkt. No. 5. This is the first mention of "Dereck Hull" as the defendant's registered agent. The accompanying declaration from the plaintiff's counsel does not mention "Dereck Hull;" it says only that counsel attempted personal service "on Defendant DRX Marketing, LLC" at the Higgins Avenue address. Dkt. No. 5 at ¶2. The declaration attests, however, that personal service "failed because the Registered Office address is currently occupied by a UPS Store, which refused service on DRX." Id. at ¶3.

The December 2023 declaration goes on to aver that the plaintiff also mailed the required documentation "to DRX on October 25, 2023 . . . at the address of its Registered Agent with sufficient postage applied," that counsel did not receive that mailing back as undeliverable and that the defendant did not respond to it. Id. at ¶¶4-5.

The court did not hear anything else from the plaintiff, so on February 2, 2024, it ordered that by day's end on February 9, 2024, the plaintiff must file a status report updating the court on the status of service. Dkt. No. 7. On February 9, 2024, the court received from the plaintiff's counsel a status report, advising the court that it was counsel's opinion that the Clerk of Court should enter default judgment. Dkt. No. 8. Counsel stated that it was counsel's understanding, having spoken with a deputy attorney general at the New

2

Jersey Attorney General's Office, that "receipt by the New Jersey Department of Revenue (DORES) for substitute service constitutes service on the defendant." Id. Counsel also stated that he had been informed in those same discussions that "if substitute service failed, notice of such failure would have been provided by DORES;" counsel had not received such notice. Id. At the end of the letter, counsel cited 28 U.S.C. §1746, governing unsworn declarations under penalty of perjury. Id.

Four days later, the court received from the plaintiff's counsel an updated status report. Dkt. No. 9. Counsel recounted that attached to the report was a letter from the New Jersey Treasurer "regarding service through NJ DORES . . . ." Id. Counsel reiterated that this documentation supported entry of default. Id. The document attached to the updated report is a letter on the letterhead of New Jersey State Treasurer Elizabeth Maher Muola, dated February 12, 2024, stating that a copy of the complaint in this case "was sent to the last known below listed registered agent of record on December 12, 2023." Id. It listed Dereck Hull, 602 Higgins Ave., Apt. 182, Brielle, NJ 08730, and stated that as of the date of the letter—February 12, 2024—the complaint had not been returned to the treasurer's office as undeliverable. Id.

On March 11, 2024, the plaintiff's counsel filed a motion for entry of default. Dkt. No. 11. The motion recounted the above history of attempted service. Counsel also provided a sworn declaration in support of the motion. Dkt. No. 12. The clerk entered default on March 11, 2024.

The court received the plaintiff's motion for default judgment on May 9, 2024. Dkt. No. 13. The plaintiff also filed a brief in support of the motion (Dkt. No. 14) and two declarations—one from the president of the plaintiff (Dkt. No. 15) and one from counsel (Dkt. No. 16).

3

## II. Entry of Default

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

The Federal Rules of Civil Procedure state that to serve a corporate defendant, a plaintiff must either comply with the laws governing service in the state where the district court is located (in this case, Wisconsin) or where service is made (in this case, New Jersey), or "by delivering a copy of the summons and complaint to an officer . . . or other agent authorized by appointment or by law to receiver service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). The plaintiff has attested that it attempted service in New Jersey.

The New Jersey Revised Uniform Limited Liability Company Act (RULLCA) requires that a limited liability corporation designate and continuously maintain an office in the state (it need not be the place of activity) and an agent for service. N.J. Stat. Ann. §42:2C-14. It contemplates service on the corporation's registered agent. N.J. Stat. Ann. §42:2C-17. The RULLCA provides that if the agent for service of process cannot with reasonable diligence be found at the agent's street address, the filing office is an agent of the company upon whom process, notice or demand may be served. N.J. Stat. Ann. §42:2C-17(b). The option for substituted service "prevents an LLC from bypassing its obligation to designate an agent and address for service as a

4

method of thwarting litigation." MTAG v. Tao Investments, LLC, 476 N.J. Super. 324, 339 (App. Div. 2023).

The complaint alleges that upon information and belief, defendant DRX Marketing is a New Jersey limited liability corporation. Dkt. No. 1 at ¶2. That means that under New Jersey law, it was required to designate and continuously maintain an office in New Jersey and an agent for service of process. The court has confirmed with the New Jersey Department of the Treasury Division of Revenue & Enterprise Services https://www.njportal.com/DOR/businessrecords) that DRX Marketing LLC is a foreign limited liability corporation whose corporate status has been suspended since November 16, 2024 for failure to file annual reports in 2023 and 2024; the office lists "Dereck Hull"—identified as the CEO—as the agent for service of process, and provides an address of 602 Higgins Avenue, 182, Brielle, New Jersey. This is the address at which the process server attempted to serve the defendant—the address that the process server avers is a United Parcel Service store. The process server reported on the October 4, 2023 Proof of Service form explains that the process server returned the summons unexecuted because "[i]t brings you to a UPS. The store has mailboxes I asked the guy inside he said he don't know who that is." Dkt. No. 6-1. The court is satisfied that the plaintiff attempted personal service on the defendant as required by New Jersey law, but was unsuccessful.

The plaintiff next attempted service on October 25, 2023 by mailing the summons and complaint via first class mail, along with a requested waiver of service, to the registered agent's address on file, 602 Higgins Ave., #182, Brielle, New Jersey. Dkt. No. 6 at ¶4; 6-2. The plaintiff's attorney avers that the mail was not returned as undeliverable. Dkt. No. 6 at ¶5. The defendant did not return the waiver or otherwise respond. Id. at ¶6.

Having received no response to the mailing, the plaintiff resorted to substitute service on the "filing office" under N.J. Stat. §42:2C-17. The RULLCA defines the "filing office" as the Division of Revenue in the Department of the Treasury. N.J. Stat. Ann. 42:2C-2. The plaintiff's counsel attests to sending the summons, complaint, the New Jersey certificate of registration for DRX Marketing LLC, the New Jersey Status Report for DRX Marketing LLC, an affidavit of attempted service and the $75 fee via FedEx to the filing office at 33 West State Street, 5th Floor, Trenton, New Jersey, 08608. Dkt. No. 6-3. In her letter dated December 12, 2023—provided by the plaintiff's counsel—the New Jersey State Treasurer acknowledged receipt of the complaint on December 12, 2023 and stated that her office would "attempt" to serve the complaint on the defendant under N.J. Stat. Ann. §2A: 15-30.1. Dkt. No. 6-4. The treasurer's February 12, 2024 letter to counsel stated that her office sent the complaint to Derek Hull at the Higgins Avenue address on December 12, 2023 and that it had not been returned as undeliverable. Dkt. No. 9-1.

The plaintiff argues in its brief in support of default judgment that because the treasurer received the complaint on December 12, 2023, the defendant was required to answer by January 2, 2024. Dkt. No. 14 at 2. The New Jersey statute states that "the official or agency upon which substituted service has been made, within two days after service, shall notify the business entity to which the process was directed, by a letter to its registered office, if any or to any officer of the entity known to the official or agency." N.J. Stat. Ann. §2A:15-30.1. The statute states that service is effected at the earliest of (1) the date the limited liability company receives the process, notice or demand; (2) the date shown on the return receipt; or (3) five days after the process is

6

deposited with the United States Postal Service. N.J. Stat. Ann. §42:2C-17(d)(3).

It appears that the address on Higgins Avenue is the only address available for this limited liability corporation. The treasurer likely sent the complaint to that address because that is the address the defendant provided when it registered as a New Jersey limited liability corporation. The plaintiff has complied with the New Jersey statute. The court concludes that the plaintiff effected service under New Jersey law as of December 17, 2023.

### III. Plaintiff's Request for Entry of Default Judgment (Dkt. No. 13)

Once the clerk has entered default, Rule 55(b) states that a party "must apply to the court for a default judgment." When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Such proceedings are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement

Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

A.  Liability

   1.  *The Complaint*

The plaintiff, a Wisconsin corporation, filed its complaint under the trademark and copyright laws of the United States. Dkt. No. 1 at ¶¶3, 4. The court has personal jurisdiction because the defendant allegedly engaged in substantial and not isolated activities in Wisconsin, including accessing and recording a website of the plaintiff's client in this district. Dkt. No. 1 at ¶5.

Kati Whitledge founded the plaintiff corporation to market her idea of matching a salon customer to a particular stylist. Id. at ¶7. She created a specialized survey around the qualities and characteristics the customer might be looking for in a stylist, including questions about requests, personal style and salon preferences. Id. at ¶¶8, 9. The software featuring the survey has been licensed to salons across the United States. Id. at ¶11. Whitledge built iterations of the survey in 2016 and 2021. Id. at ¶12. The plaintiff corporation owns the intellectual property rights to the survey and its business. Id. at ¶13.

The defendant, founded by Dereck Hull, offers a marketing and management platform designed around the salon industry. Id. at ¶16. The defendant directly competes with the plaintiff to provide "efficient business management for salons." Id. at ¶20.

The plaintiff and Whitledge became aware that the defendant was using the plaintiff's 2016 and 2021 surveys in its business. Id. at ¶21. As an example, the plaintiff included in its complaint a hyperlink to an online meeting on YouTube in which Dereck Hull—the CEO of defendant DRX Marketing and Salon Ninja—explained the DRX Salon Ninja platform by using

8

references and visuals from the plaintiff's 2016 survey. Id. at ¶¶15, 22, 23. The plaintiff also included a partial transcript of the video. Id. at ¶23. When referencing the plaintiff's 2016 survey (shown through an access on the website of a salon located in Delafield, Wisconsin), Hull clicked through the plaintiff's survey that the plaintiff had licensed to its client. Id. at ¶25. The plaintiff never gave the defendant or Hull permission to use the survey in any capacity, including for promotional videos or advertisements. Id. at ¶26.

On August 31, 2023, Jessica's Color Room in Middletown, Connecticut received a survey from the defendant that appears to have been copied from the plaintiff's 2016 survey. Id. at ¶¶29-31. A side-by-side comparison of the plaintiff's and defendant's surveys reveals that they are the same or substantially similar. Id. at ¶32. Additionally, the plaintiff's 2021 survey appears to have been copied by the defendant for use on Jessica's Color Room website. Id. at ¶¶33, 34. The plaintiff's logo from the 2016 survey and the 2021 survey appear to have been copied by the defendant for use in the Jessica's Color Room email. Id. at ¶¶37-39.

### 2. *Lanham Act Violations*

The plaintiff brings three claims under the Lanham Act, 15 U.S.C. §§1114, 1125. Section 1114(a) of the Lanham Act "specifies a cause of action for the unauthorized use of a registered trademark" and

> renders a person liable . . . when he 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

Phoenix Entm't, LLC v. Rumsey, 829 F.3d 817, 822 (7th Cir. 2016) (quoting 15 U.S.C. §1114). Section 1125(a) "creates a remedy against a person who engages

9

in unfair competition by, *inter alia*, falsely designating the origin of a product." Id. Section 1125 renders "liable in a civil suit"

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which— (A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

Id.

Both statutes require a plaintiff to show "(1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." Phoenix, 829 F.3d at 822 (citing CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 673–74 (7th Cir. 2016)). The Seventh Circuit has recognized seven factors for courts to consider in assessing confusion: (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use;(4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to "palm off" its product as that of another. Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 425 (7th Cir. 2019). Because the court must apply the analysis individually, in each case, none of the factors are dispositive. AutoZone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir. 2008). The Seventh Circuit has held that "the similarity of the marks, the defendant's intent, and actual confusion are particularly important" when conducting the analysis. Id.

The plaintiff's first claim for unfair competition and false designation of origin and its third claim for trademark infringement are based on the display of the plaintiff's survey in the sales video that the defendant posted online. The plaintiff says that its surveys prominently displayed the plaintiff's registered United States Trademark, Registration Number 5,154,298, for the "Meet Your

10

Stylist" mark. Dkt. No. 1 at ¶¶61-63. In the partial transcript of the video the plaintiff quotes in the complaint, Hull references the plaintiff's survey, states that the client pays $197 per month and adds that the "Meet Your Stylist" platform is "built in" to the defendant's platform. Id. at ¶¶23, 42.

The plaintiff says that it never licensed its 2016 or 2021 survey to the defendant even though the defendant used the survey(s)—with the plaintiff's marks—in demonstrations for the defendant's business. Id. at ¶¶43, 44. The plaintiff alleges that the defendant integrated the plaintiff's survey into its own platform in disregard of the plaintiff's rights, using the plaintiff's survey to sell the defendant's software. Id. at ¶45, 46. The plaintiff asserts that the use of the plaintiff's surveys—with the plaintiff's mark—in the same market could create a false impression likely to cause confusion, mistake or to deceive as to origin, sponsorship or approval. Id. at ¶47.

The plaintiff's second claim alleges that defendant used the plaintiff's logo in the work that the defendant did for Jessica's Color Room. The plaintiff provided a side-by-side comparison of the plaintiff's and defendant's marks and showed that they are likely to cause confusion and to deceive a consumers as to the plaintiff's affiliation. Id. at ¶¶37, 39, 51-55. The plaintiff says that the defendant's use of the plaintiff's 2016 survey, which included use of the mark, created a false impression that there was some association between the plaintiff and defendant. Id. at ¶63.

The court is satisfied that the plaintiff has established liability under the Lanham Act.

3. *Copyright Infringement*

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Copying may be inferred where the "defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1011 (7th Cir. 2005) (citations omitted). For a work to be substantially similar, the court considers: (1) whether the defendant copied from the plaintiff's work; and (2) whether the "copying, if proven, went so far as to constitute an improper appropriation." Id. The Seventh Circuit applies the "ordinary observer" test, asking whether "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Id.

The plaintiff owns U.S. copyright registration TX 9-017-253 (the '253 Registration) for the 2016 Meet Your Stylist Survey. Id. at ¶70. The '253 Registration has an effective date of registration of August 12, 2021. Id. at ¶71. The 2016 survey was first published on March 22, 2016. Id. at ¶72.

The plaintiff has established that the defendant used its 2016 survey in the YouTube video for advertisement purposes and on Jessica's Color Room's website with minimal adjustments. Id. at ¶¶73-78. The partial transcript of the video establishes that Hull knew he was using the plaintiff's survey. Id. at ¶23 ("So, there is a platform out there right now called 'Meet Your Stylist,' which is for salons. It is $197 a month, we have built it into our platform."). The defendant included identical questions and answer options from the plaintiff's survey. Id. at ¶76. A side-by-side comparison is included in the plaintiff's complaint. Id. at ¶32. The defendant used the plaintiff's logo, with the same font, colors and design and minimal changes. Id. at ¶78. The defendant

12

charges clients a fee to incorporate the "copycat survey" on the client's websites. Id. The defendant did so without a license or permission to reproduce the plaintiff's survey. Id. at ¶¶81-87.

Similarly, the plaintiff owns U.S. copyright registration TX 9-017-254 (the '254 Registration) for the 2021 Meet Your Stylist Survey. Id. at ¶89. The '254 Registration effective date is August 12, 2021. Id. at ¶90. The 2021 Survey first was published on July 9, 2021. Id. at ¶91. According to the plaintiff, the 2021 survey contains sixteen questions, and the defendant used that survey on Jessica's Color Room website. Id. at ¶93. The defendant's survey uses questions and answers identical to those in the plaintiff's 2021 survey. Id. at ¶95. A side-by side comparison is included in the complaint. Id. at ¶34. The most significant distinction between the two is the size of the font:

| Inspired 2021 Survey | DRX Copy |
|---|---|
| WHICH HAIRSTYLE BEST DESCRIBES YOUR CURRENT LOOK?<br>○ Long layers<br>○ Mid-length style<br>○ Pixie/Crop<br>○ Bob | **WHICH HAIRSTYLE BEST DESCRIBES YOUR CURRENT LOOK?**<br>Hair Styles<br>○ Long layers<br>○ Mid-length style<br>○ Pixie/Crop<br>○ Bob |

| Plaintiff's Survey | Defendant's Survey |
|---|---|
| **WHICH HAIR COLOR BEST DESCRIBES THE LOOK YOU ARE SEEKING?**<br>○ Blonde, Highlights, or Babylights<br>○ Balayage, or Hair Painting<br>○ Brunette, Dark, or Rich<br>○ Red or Bright | **WHICH HAIR COLOR BEST DESCRIBES THE LOOK YOU ARE SEEKING?**<br>Color<br>○ Blonde, Highlights, Babylights or LowLights<br>○ Balayage, or Hair Painting<br>○ Single Process, Touch Up<br>○ Brunette, Dark, or Rich<br>○ Red or Bright |
| **MY HAIR TYPE IS BEST DESCRIBED AS... (SELECT ALL THAT APPLY)**<br>☐ Curly<br>☐ Thick & Coarse<br>☐ Fine & Thin<br>☐ Fine but a lot of it | **MY HAIR TYPE IS BEST DESCRIBED AS...**<br>Hair Type<br>○ Curly<br>○ Thick & Coarse<br>○ Fine & Thin<br>○ Fine but a lot of it |
| **HOW WOULD YOU DESCRIBE YOUR PERSONAL STYLE?**<br>○ Sporty or Athletic<br>○ Classic or Conservative<br>○ Trendy or Edgy<br>○ Natural or Outdoors | **HOW WOULD YOU DESCRIBE YOUR PERSONAL STYLE?**<br>Personal Style<br>○ Sporty or Athletic<br>○ Classic or Conservative<br>○ Trendy or Edgy<br>○ Natural or Outdoorsy |

Id. at ¶34. The plaintiff never gave the defendant a license or permission to use the 2021 survey. Id. at ¶¶100-103. Applying the ordinary observer test, the court finds the defendant's survey to be substantially similar to the plaintiff's and finds that the defendant has infringed the plaintiff's copyrights.

14

B. <u>Injunctive Relief</u>

The Lanham Act and the Copyright Act permit injunctive relief on a finding of infringement. 15 U.S.C. §1116(a); 17 U.S.C. §502(a). To obtain a permanent injunction, the plaintiff must show (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships; and (4) that the public interest would not be harmed by a permanent injunction. <u>eBay v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006). "[B]ecause of the difficulty in quantifying damage to the reputation or goodwill of a mark holder, courts presume irreparable harm and the inadequacy of legal remedies in Lanham Act cases." <u>GS Holistic, LLC v. Blackhawks Chief Tobacco & Vape Corp</u>., Case No. 23-CV-903, 2024 WL 3691015, *8 (E.D. Wis. Aug. 7, 2024) (quoting <u>H-D U.S.A., LLC v. SunFrog, LLC</u>, 311 F. Supp. 3d 1000, 1050 (E.D. Wis. Apr. 12, 2018)).

The plaintiff has *not* met its burden with respect to its request for injunctive relief. The plaintiff relies on the presumption of irreparable harm and a general assertion that it has no adequate remedy at law. Dkt. No. 14 at 4. In its brief in support of default judgment, the plaintiff argues that the defendant will "continue to cause damage to the plaintiff in terms of lost sales, devaluation of its intellectual property, and, potentially, damage to its reputation." Dkt. No. 14 at 4 (citing Dkt. No. 1 at ¶¶48, 58, 68, 87, 106). But the only evidence the plaintiff filed in in support of its request for damages says the opposite. Whitledge filed a declaration stating that she is not aware of the continued use by the identified website of the plaintiff's surveys or trade dress and believes that the use of the plaintiff's surveys and trade dress "ceased

15

sometime in February of 2024." Dkt. No. 15 at ¶¶10, 11. She says nothing about ongoing infringement—she says it stopped a year ago.

While "it is not uncommon for courts to issue injunctions as part as default judgments, judgment," Tempur Sealy Int'l, Inc. v. Luxury Mattress & Furniture, LLC, Case No. 23-CV-383, 2024 WL 2288890, *2 (N.D. Ind. May 20, 2024), the court is not willing to enter a permanent injunction where the plaintiff's principal has stated—under oath—that the offending conduct has ceased. Whitledge says nothing about lost customers, ongoing damage to her business or any other activity by this defendant. On this record, the court will deny the request for injunctive relief.

C. Damages

Even when default judgment is warranted on liability, the court still must conduct an inquiry to ascertain the amount of damages with reasonable certainty. A plaintiff who has established a violation of §§1125(a) or (d) or a willful violation under §1125(c) of the Lanham Act may recover (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. 15 U.S.C. §1117(a). In addition, the court may enter judgment for any sum above the amount found as actual damages, not to exceed three times such amount. Id.

Because the defendant did not appear and the plaintiff could not conduct discovery, the plaintiff has proposed Lanham Act damages based on the use of its mark in the defendant's online video and in the work performed by the defendant for Jessica's Color Room. The plaintiff starts with its set-up fee of $500 and its monthly subscription fee, ranging from $150 to $400 per month. Dkt. No. 14 at 5; Dkt. No. 15 at ¶6. The plaintiff says that it learned of the infringement (facilitated by the defendant) by Jessica's Color Room in August of

16

2023 and that it believes that the use of the surveys or trade dress ceased in February of 2024. Id.; Dkt. No. 15 at ¶7. Accordingly, the plaintiff asks for the set-up fee of $500 plus the monthly fee for seven months ($300 x 7 = $2,100) for a total of $2,600 for each of the three Lanham Act violations (Counts I – III). The plaintiff also asks the court to enhance the damages by three based on the "blatant copying of [the plaintiff's] surveys, mark and logo" as shown in the complaint. 15 U.S.C. §1117(b). The total requested award is $23,400.

The court has reservations about the plaintiff's request. It understands the plaintiff's calculation of the damages for the work that the defendant did for the Jessica's Color Room website, but it is not clear how the calculation applies to the display of the plaintiff's survey (and presumably the plaintiff's marks) in the video that was—at one time—posted online. The court does not know how long the video appeared online and has not been able to watch the video. The court does not know whether the defendant made any sales based on the video or whether the seven-month licensing fee would apply. The court will treble only the damages for the violation alleged in Count Two, and will award $6,300.

The plaintiff also asks for a statutory award of $3,750 for the copyright infringement of the 2016 survey (Count IV) and an additional $3,750 for infringement of the 2021 survey (Count V). Dkt. No. 15 at 6. A plaintiff may seek statutory damages rather than actual damages and profits in a sum of not less than $750 or more than $30,000, as the court considers just. 15 US.C. §504(c)(1). The plaintiff registered the 2016 survey on March 22, 2016 and the 2021 survey on August 12, 2021—before the alleged use by the defendant. Dkt. No. 1 at ¶¶71, 90. The plaintiff has shown that the defendant used the surveys without authorization, based on the video and the work done for Jessica's

17

Color Room. Dkt. No. 1 at ¶¶21-28. The court will award $7,500 for the copyright infringement of the two surveys.

### D. Costs

Finally, the Lanham Act allows a prevailing party to recover the costs of the case, including reasonable attorney fees in exceptional cases. 15 U.S.C. §1117(a). The court finds that the plaintiff may recover its expenses in the amount of $402 for the filing fee and $162.71 for the attempted personal service on Hull. Dkt. No. 16 at ¶2. The plaintiff asks for attorney's fees in the amount of $20,931 "through the submission of the accompanying motion." Id. at ¶3. But the plaintiff has provided no support for that request beyond a single sentence in the plaintiff's attorney's declaration. Dkt. No. 16 at ¶3 ("Total attorneys' fees incurred by IE in this case are $20,931.00 through the submission of the accompanying motion."). The plaintiff's counsel did not provide an hourly rate, an itemized billing statement or any other information supporting the fees requested. Without this information, the court cannot assess whether the requested fees are reasonable.

The court also observes that months after effecting service, counsel had not filed a request for default. The court ordered counsel to file a status report; rather than filing a request for default, counsel filed status reports opining that the clerk should do so. Counsel filed a request for default only after the court advised that such a motion was necessary (Dkt. No. 10). The request for default was only three pages in length (and did not explain where counsel had obtained information about the defendant's registered agent, which would have been helpful) and the brief in support of the motion for default judgment is only ten pages long. Dkt. Nos. 11, 14. In addition, the plaintiff's counsel has not been required to appear at any hearings, by phone or otherwise.

18

The court will set a deadline below for the plaintiff's counsel to file documentation supporting his request for attorney's fees. Whatever the amount of fees counsel seeks, he must justify that amount with evidence. If the court does not receive supporting documentation by the deadline, the court will deny counsel's request for attorney's fees.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for default judgment. Dkt. No. 14.

The court **DENIES** the plaintiff's request for injunctive relief.

The court **ORDERS** that the clerk must enter judgment in favor of the plaintiff and against the defendant in the amount of $13,800 plus costs in the amount of $564.71.

The court **ORDERS** that by the end of the day on **March 17, 2025**, the plaintiff's counsel must file evidence justifying his request for attorney's fees. Once the court receives that justification, it will rule on counsel's request for fees and will dismiss the case. If the court does not receive evidence supporting counsel's fee request by day's end on March 17, 2025, the court will deny his request for fees and dismiss the case.

Dated in Milwaukee, Wisconsin this 10th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**